2021 IL App (1st) 190955-U

No. 1-19-0955

Order filed October 25, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 9257 |
| | ) | |
| JONATHAN ALVAREZ, | ) | Honorable |
| | ) | Thomas Joseph Hennelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Hyman and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The State proved defendant's guilt of aggravated unlawful use of a weapon beyond a reasonable doubt where a rational trier of fact could accept the testimony of the State's witness.

¶ 2     Following a bench trial, defendant Jonathan Alvarez was found guilty of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3) (A-5); (a)(1), (a)(3)(C) (West 2018)) and sentenced to one year's imprisonment. Alvarez argues on appeal that the State failed to prove beyond a reasonable doubt that he possessed a firearm because the State's lone witness

was incredible and impeached, and the State did not present physical or forensic evidence connecting him to the firearm. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Alvarez was charged by indictment with six counts of AUUW. Count I charged Alvarez with knowingly carrying on his person an uncased, loaded, immediately accessible firearm without a valid concealed carry license (CCL) or Firearm Owners Identification (FOID) card. 720 ILCS 5/24-1.6(a)(1), (a)(3) (A-5); (a)(1), (a)(3)(C) (West 2018). The State nol-prossed counts II-VI.

¶ 5      At trial, Chicago police officer Johnathon Martinez testified that, at approximately 11:58 p.m. on June 5, 2018, he drove a marked vehicle with a partner, Officer Vincent Hernandez. On the 2600 block of West 23rd Place, in Chicago, Martinez observed two individuals walking on the sidewalk to his right: Alvarez, whom Martinez identified in court, and a shorter individual. It was dark, but there were streetlights. Alvarez was near the street.

¶ 6      Another individual, wearing a yellow shirt, stood on the opposite side of the street. The individual in yellow whistled twice and yelled "A O," which Martinez recognized as a warning about the police. Alvarez looked at Martinez, crouched towards a parked vehicle, threw a silver, shiny object under the vehicle, then stood and continued walking.

¶ 7      Martinez and Hernandez detained all three individuals. Martinez then canvassed the area where Alvarez threw the item and recovered a loaded, silver .357 magnum revolver under a parked vehicle, near the left rear wheel. Martinez did not observe any other shiny objects. From the time Alvarez was detained, no one else was present except for a woman walking her dogs, but she arrived after the incident and Martinez did not see her throw anything.

¶ 8    Martinez and Hernandez wore body cameras, and Martinez stated that he reviewed the footage before trial, and it was an accurate depiction. The State then sought to "publish" People Exhibit No. 1, which the state described as "the body camera footage." Defense counsel stated that she had no objection to the exhibit and stipulated to its foundation. The exhibit, which is included in the record on appeal, is a CD containing multiple video files from the body cameras of Hernandez, Martinez, and other officers. The State played approximately 20 seconds of one video, "from minute 705 to 726." According to Martinez, the video was from Hernandez's body camera and showed Martinez at the scene. In the published portion, Martinez donned gloves near a black SUV and tells other officers that he "knew it." The SUV is parked with its driver's side near the curb, and a silver firearm is visible near the driver's side rear wheel.

¶ 9    On cross-examination, Martinez testified that the body camera footage accurately depicted the lighting conditions. Martinez drove the wrong way down 23rd, and vehicles were parked on both sides of the street. Martinez activated his body camera while in the vehicle, but neither his nor Hernandez's body camera footage captured the individual in yellow issuing the warning or Alvarez throwing anything. Martinez agreed that he approached the individual in the yellow shirt because he said "mother f***" the officers. Martinez and Hernandez took the individual to the ground and handcuffed him, which took a short amount of time. During that time, other officers arrived, and Alvarez and the shorter individual stood near the police vehicle. Martinez then returned to his vehicle and spoke with Alvarez and the shorter individual.

¶ 10    About six minutes after the officers activated their body cameras, Martinez, Hernandez, and the other officers searched for the firearm. The officers looked around parked vehicles and in the surrounding yards. Martinez found the firearm under a black SUV. Martinez did not recall how

much time passed before he recovered the firearm or how many vehicles were parked between the police vehicle and the SUV.

¶ 11 Martinez agreed that a sergeant who responded to the scene asked him whether Alvarez was the only person near the vehicle, and Martinez clarified in his testimony that "the juvenile" was also present. Martinez told the sergeant that he saw Alvarez make a throwing gesture, which he demonstrated for the sergeant, but Martinez did not mention a shiny, silver object to the sergeant or anyone else. The State entered a stipulation that, on June 5, 2018, Alvarez had not been issued a valid CCL or FOID card.

¶ 12 The court immediately announced its findings following closing arguments. The court stated that it judged Martinez's credibility and did not find it significant that he was slightly impeached "regarding what he said." The court believed that Alvarez possessed a firearm and threw it under a vehicle when he was alerted to the officers' presence and found Alvarez guilty.

¶ 13 Alvarez filed a motion to reconsider or for a new trial, arguing in relevant part that the State failed to prove him guilty beyond a reasonable doubt. At a hearing thereon, defense counsel requested the trial court "view People's Exhibit 1 which was admitted at trial," namely, footage from "the body-worn camera of Officer Vincent Hernandez." Counsel noted that "[t]he State published some portions of that, but I would ask that the Court review the first nine minutes." The trial court agreed to watch it and continued the proceedings.

¶ 14 The portion of Hernandez's body camera footage identified by defense counsel depicts Hernandez and Martinez arriving at the scene and detaining Alvarez, the shorter individual, and the person in yellow. Hernandez and the other officers appear to start searching for the firearm approximately six minutes into the footage, canvassing the sidewalk, yards, and parked vehicles

with flashlights. About one minute later, Hernandez and other officers approach Martinez, who is standing beside the firearm and tells them that he "knew it," and demonstrates a throwing motion he saw one of the individuals make after the person in yellow issued the warning. After recovering the firearm, Martinez tells the sergeant that Alvarez and the shorter individual were near the firearm and that he saw the taller one make, a throwing gesture, which he demonstrates again.

¶ 15    On the next court date, defense counsel argued that the video bolstered the defense's arguments at trial that Martinez did not see Alvarez throw a shiny, silver object because the video showed the scene was dark, the firearm was under a large SUV situated four or five vehicle lengths from where the officers stopped their own vehicle, the SUV was between the officers and Alvarez, the assisting officers were not directed to the SUV, and Martinez did not mention a shiny silver object to anyone on the scene. The court review the video in its entirety, found Martinez credible and denied the motion.

¶ 16    Following a hearing, the court sentenced Alvarez to one year's imprisonment. Alvarez's motion to reconsider sentence was denied.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, Alvarez argues the State failed to prove beyond a reasonable doubt that he possessed a firearm. Alvarez also argues the State's evidence was insufficient because no physical evidence linked him to the firearm, and Martinez's testimony was incredible and impeached on cross-examination and by the footage contained in People's Exhibit No. 1.

¶ 19    When reviewing the sufficiency of the evidence, a reviewing court determines whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Gray*, 2017 IL

120958, ¶ 35. The trier of fact is charged with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts. *Id.* A trier of fact's credibility determinations are entitled to great deference, and a reviewing court will not substitute its judgment for that of the trier of fact on questions involving the credibility of witnesses or the weight of the evidence. *Id.* A conviction will not be reversed unless the evidence is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *Id.*

¶ 20      The testimony of a single witness, if positive and credible, may sustain a conviction. *Id* at ¶ 36. Eyewitness testimony is insufficient only where the record evidence compels the conclusion that no reasonable person could accept the testimony beyond a reasonable doubt. *Id.* The same standard of review applies whether the evidence is direct or circumstantial, and circumstantial evidence may be sufficient to sustain a criminal conviction. *People v. Jackson*, 2020 IL 124112, ¶ 64.

¶ 21      To convict Alvarez of AUUW, the State was required to prove that he possessed an uncased, loaded, immediately accessible firearm on his person without a valid CCL or FOID card. 720 ILCS 5/24-1.6(a)(1), (a)(3) (A-5); (a)(1), (a)(3)(C) (West 2018). Alvarez does not contest that he had not been issued a valid CCL or FOID card, only that the State did not prove that he possessed a firearm.

¶ 22      "Possession may be actual or constructive." *People v. Balark*, 2019 IL App (1st) 171626, ¶ 94. Actual possession is the exercise of present personal dominion over illicit material and exists when a person exercises immediate and exclusive dominion or control over the material. *Id.* It does

not require present personal touching of the contraband. *Id.* Actual possession of a weapon may be shown by testimony that the defendant tried to conceal it or throw it away. *Id.*

¶ 23    At trial, Martinez testified that, as the officers drove down 23rd, the person in yellow alerted Alvarez**,** who crouched and threw a silver, shiny object beneath a vehicle. Subsequently, the officers detained Alvarez, the shorter individual he was with, and the person in yellow. Officers canvassed the area, and Martinez recovered a loaded, silver firearm underneath a vehicle. He did not observe other shiny objects or observe anyone else throw anything. Once Alvarez was detained, no one else was near the firearm besides a woman walking her dogs, who did not arrive until after the incident occurred. From that evidence, a rational trier of fact could find that Alvarez had actual possession of the firearm. See *Jackson*, 2020 IL 124112, ¶ 70 (trier of fact need not be satisfied beyond reasonable doubt as to each fact in chain of circumstances so long as all evidence, taken together, satisfies trier of fact of defendant's guilt beyond reasonable doubt); see also *Balark*, 2019 IL App (1st) 171626, ¶ 94 (actual possession may be proven by testimony defendant tried to conceal or throw away weapon).

¶ 24    Alvarez argues that Martinez's testimony that he saw Alvarez throw a shiny, silver object under a vehicle was incredible because he did not tell anyone at the scene about the object, including the sergeant to whom he demonstrated the throwing motion, and detained the individual in yellow upon exiting his vehicle rather than immediately recover the object or direct another officer to do so.

¶ 25    Viewing the evidence in the light most favorable to the State, we find a rational trier of fact could accept Martinez's testimony. While Martinez did not describe a shiny, silver object to anyone on the scene, and stated that the search for the firearm began about six minutes after he

started his body camera, he also testified that he told the sergeant that he saw Alvarez throw something, and Hernandez's body camera footage depicts Martinez standing next to the firearm and telling other officers that he "knew it." The video also shows Martinez demonstrating the throwing motion to the officers and again to the sergeant. It also shows Martinez clarifying to the sergeant that Alvarez and the shorter individual were near the firearm, and it was the taller one who made the throwing gesture.

¶ 26    Alvarez further argues that Martinez's own body camera footage undermines his testimony because it shows the scene was dark; he did not tell anyone about the shiny, silver object; he did not immediately search the area he testified Alvarez threw the weapon or instruct another officer to do so; and he asked questions of the detained individuals without inquiring about Alvarez crouching or throwing a shiny object.

¶ 27    Although the footage from Martinez's body camera is contained on the disk admitted as People's Exhibit No. 1, that footage was not shown at trial and neither party asked the court to view it during the trial. The court announced its verdict immediately following closing arguments, and the transcript does not reflect a recess where the court might have viewed Martinez's body camera footage. Defense counsel did not request the court view Martinez's footage in connection with Alvarez's posttrial motion. Therefore, while both parties rely on Martinez's video footage on appeal, the record does not show that the court viewed that footage at any time.

¶ 28    The court heard Martinez testify to many of the same circumstances that Alvarez posits are shown by Martinez's body camera footage—namely, that he did not mention a shiny, silver object on the scene. The officers began searching for the firearm approximately six minutes after Martinez and Hernandez activated their body cameras, and they investigated yards and around

parked cars before the firearm was discovered. Ultimately, the court found Martinez credible, and given that Martinez told the sergeant that he saw Alvarez throw something and Hernandez's body camera footage depicts him demonstrating the throwing motion and telling other officers that he "knew it" while he stands near the firearm, the record evidence is not so insufficient that no rational trier of fact could accept Martinez's testimony beyond a reasonable doubt. See *Gray*, 2017 IL 120958, ¶¶ 35-36 (reviewing court will not substitute its judgment for that of the trier of fact on questions involving witness's credibility, and eyewitness testimony is insufficient only where no reasonable person could accept it beyond reasonable doubt).

¶ 29                                    III. CONCLUSION

¶ 30    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 31    Affirmed.